
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

AUG 18 2008

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CORDERO CANDIDO<br>aka CANDIDO CORDERO[1]<br>FED. REG. NO. 61149-053 | CIVIL ACTION NO. 08-0417 |
| VERSUS | JUDGE DEE D. DRELL |
| JOE KEFFER, WARDEN, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Candido Cordero is a prisoner in the custody of the Federal Bureau of Prisons ("BOP"). He is incarcerated at the United States Penitentiary, Pollock ("USPP"). On March 24, 2008, he filed the instant pro se civil rights complaint pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971)[2] complaining that he has been denied appropriate medical care and that he has been retaliated against by prison officials. He prays for injunctive relief, and compensatory damages from USPP Warden Joe Keffer, School Director Martinez, Captain R. Marguez, Physician Assistant W. Vasquez, Teacher L. Burnette, Clinical

---

[1] Plaintiff identified himself as Cordero Candido in this action and in two civil rights complaints filed in the United States District Court for the Middle District of Pennsylvania. See 3:2006-cv-00490 and 3:2006-cv-01112. However, the BOP Inmate Locator Service identifies him as Candido Cordero. See http://www.bop.gov/iloc2/LocateInmate.jsp; and, he was prosecuted and convicted of reentry of a deported alien in the United States District Court for the Eastern District of New York in the matter entitled <u>U.S.A. vs. Candido Cordero</u>, No. 1:02-cr-00712. It is therefore presumed that plaintiff's true name is Candido Cordero.

[2] <u>Bivens</u> authorizes civil rights suits filed against federal agents or employees.

1

Director J. Alexandre, Hospital Staff Director Smith, and Mrs. Dixon (a nurse at USPP). This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## Statement of the Case

Plaintiff has alleged that, on February 7, 2008, he heard Ms. Burnette, a teacher at USP-P, make a comment to a co-worker about him. Plaintiff asked Ms. Burnette if she had a personal problem with him, and she put her finger on him and shoved him out of her way. Plaintiff claims that Ms. Burnette then sent "her informants" to kill him. [Amended Complaint, Doc. #15, p.5] Plaintiff claims that he reported the threat to Martinez, the director of the USP-P school, but Martinez failed to act. Plaintiff also claims that Martinez took him out of the school "in retaliation" for filing a tort suit against Ms. Burnette. [Amended Complaint, Doc. #15, p.5]

Plaintiff alleges that, on June 10, 2008, Nurse Dixon sent a callout to him for a Tuberculosis test. Plaintiff complains that Nurse Dixon did not call him back to let him know the results. Three days after the test, Plaintiff had a "big red ball" on his arm. He saw Mrs. Bacon at the mess hall and asked her to check his arm. Mrs. Bacon told Plaintiff that he was positive for Tuberculosis, and she sent him to see Dr. Alexandre. Dr. Alexandre reported to Plaintiff that, according to his medical chart,

2

Plaintiff has been positive for Tuberculosis for three years. Plaintiff complains that he was never informed of his illness and never received treatment. Id.

Next, Plaintiff complains that prison officials refused to provide him with prescribed treatment for his ankle, which had been operated on several years before. [Amended Complaint, Doc. #15, p.6]

Plaintiff alleges that, on March 21, 2008, two inmates went into his cell each armed with a knife and with the intention of killing him. [Doc. #15, p.7] Plaintiff claims that Mrs. Well saw the men with knives and did nothing. Plaintiff believes that the administration sent the two inmates to kill him. Id.

In his original complaint, Plaintiff alleged that Burnette, Vasquez, and Alexandre showed his personal and confidential records to inmates working in prison administration in retaliation for two lawsuits that he had filed against Karen Hogsten, the warden at the Federal Correctional Institution in Allenwood, Pennsylvania.

Plaintiff also alleged in the original complaint that the USPP staff "... prescribe tortures and other barbarious [sic] methods of punishment repugnant to the conscience of mankind..." He claimed that Burnette allows other inmates access to prisoner records via her computer because she has an intimate relationship with the leader of a prison gang. [Doc. #1]

On March 24, 2008, Plaintiff filed a Motion for Temporary

3

Restraining Order and Preliminary Injunction. Plaintiff claimed that, on April 9, 2006, he was beaten by corrections officers at the federal prison in Allenwood, Pennsylvania. He filed suit in the federal court in Pennsylvania. He claims that the USP-P staff are retaliating against him for filing suit against the Allenwood staff by refusing him medical care; he also claims that the USP-P staff is harassing him in retaliation for the Pennsylvania lawsuit.

Plaintiff filed a motion seeking the appointment of counsel. [Doc. #4] On April 10, 2008, the undersigned denied Plaintiff's motion to appoint counsel. [Doc. #7] Plaintiff's motion for a temporary restraining order [Doc. #3] was denied on August 5, 2008 [Doc. #16].

With his amended complaint, Plaintiff submitted incident reports from FCI Herlong and USP Atwater, sick call requests from USP Atwater, and medical records from physicians at various facilities.

## Law and Analysis

Plaintiff was ordered to amend his complaint to describe in sufficient detail the injury or harm he sustained as a result of the defendants' actions. In response, Plaintiff complained that he suffers from anxiety and post traumatic stress from the incident with Ms. Burnette, and he continues to suffers with foot pain due to a denial of proper medical care.

1. **Medical Care**

   A. **Ankle**

   The constitutional right of a convicted prisoner to medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm resulting in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

   To establish an actionable constitutional violation, Plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir.2001). In response to the order to amend his complaint, Plaintiff alleged that "soft shoes" have been prescribed for him, but because he is indigent, he cannot afford to buy "soft shoes." Plaintiff complains that, because the defendants did not provide him with the "soft shoes" and refused to give him physical therapy, they violated his constitutional rights.

   In support of his claim, Plaintiff submitted copies of four sick call requests that he made while incarcerated at USP Atwater,

due to ankle pain[3]. Plaintiff also submitted radiology reports[4] from physicians at other institutions noting mild degenerative changes and osteoarthritis in Plaintiff's ankle. [Doc. #15, p.16-22]

Medical records indicate that Plaintiff was also examined at a federal transfer center on September 15, 2006. He was prescribed 800 mg ibuprofen three times a day for thirty days for ankle pain and swelling. [Doc. #15, p.25] Plaintiff was examined by a podiatrist in April 2007, while housed at USP Atwater. The podiatrist prescribed ibuprofen and "low top shoes." [Doc. #15, p.24] The only medical record submitted by Plaintiff since his arrival at USP-P indicates that he was examined on May 19, 2008, due to complaints of ankle pain. The medical record indicates chronic left ankle pain from fracture six years prior. Plaintiff was prescribed naproxen sodium, 550 mg, twice a day for ninety days. [Doc. #15, p.26] None of Plaintiff's medical records indicate that physical therapy was ever prescribed by any physician.

Plaintiff has not provided allegations to establish that the defendants in this case were deliberately indifferent to his serious medical needs. While a doctor at a previous institution

---

[3]The requests are dated: September 23, 2006, October 20, 2006, November 6, 2006, and December 21, 2006.

[4]The reports are dated: July 10, 2003, April 29, 2004, September 7, 2005, October 30, 2006, and November 6, 2006.

recommended low top shoes, the physician at USP-P prescribed only medication, which Plaintiff has been provided. Thus, what Plaintiff has described is essentially a difference of opinion as to treatment, which does not give rise to a constitutional violation. See Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999)(doctor's failure to follow other doctor's recommendations amounts to nothing more than a difference of opinion); Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997)("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.")

Moreover, the plaintiff cannot show that he was exposed to a substantial risk of serious harm and that jail officials acted, or failed to act, with deliberate indifference to that risk. Plaintiff was examined as requested and was prescribed ninety days of medication at USP-P. His disagreement with his medical treatment does not state a claim under the Eighth Amendment. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Furthermore, he cannot litigate his complaints against other institutions in this case.

B. **Tuberculosis**

Plaintiff complains that he tested positive for Tuberculosis three years ago, but he was not informed of his illness until June 13, 2008. Thus, he argues that he was denied proper medical

7

treatment for three years. Plaintiff was called out for a Tuberculosis test on June 10, 2008. Three days later, he learned the results of the test - that he was positive for Tuberculosis. Plaintiff was then sent to Dr. Alexandre, who treated Plaintiff at USP-P.

While the medical departments at prior institutions may not have informed Plaintiff of his illness or treated Plaintiff for same, those medical professionals are not defendants in this lawsuit. To the extent that Plaintiff claims that these USP-P defendants violated his constitutional rights with regard to treatment for Tuberculosis, Plaintiff has not presented any allegations to support that claim. To the contrary, Plaintiff provides that he was tested and informed of his results while at USP-P and that he was sent to the prison doctor for treatment.

## 2. Retaliation

Plaintiff claims that he has been the victim of retaliation. Specifically, he claims that Martinez took Plaintiff out of the school at USP-P in retaliation for Plaintiff filing a tort suit against Ms. Burnette, who is one of the teachers. Plaintiff also alleged that Burnette, Vasquez, and Alexandre showed his personal and confidential records to inmates working in prison administration in retaliation for two lawsuits that he had filed against the warden at the Federal Correctional Institution in Allenwood, Pennsylvania.

It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.

Plaintiff has provided nothing more than a conclusory allegation that he is being denied medical care in retaliation for filing a civil suit against the warden of a prison in Pennsylvania. Plaintiff has not alleged any facts to support that conclusion. With regard to being removed from the school in retaliation for filing a civil suit, Plaintiff has not alleged a constitutional right. The law is well settled that a prisoner has no constitutional right to participate in an educational or rehabilitative program. See Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir. 1995); Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988).

3. **Other claims**

Plaintiff makes a conclusory allegation that Ms. Burnette sent "her informants" to kill him. He alleges that two inmates entered

9

his cell armed with knives. However, he does not allege that either inmate attacked him. Plaintiff does not allege that he was ever attacked at USP-P.

Plaintiff made an allegation that USP-P uses torture and barbarous methods of punishment. Despite being provided an opportunity to amend his complaint, Plaintiff presented no facts in support of this claim.

To the extent that Plaintiff seeks compensatory damages for mental anguish as a result of being shoved by Ms. Burnette, Plaintiff also fails to state a claim for which relief can be granted. Under Title 42 U.S.C. § 1997e(e), an inmate cannot recover compensatory damages for mental and emotional injury suffered while in custody without a prior showing of physical injury. Jones v. Greninger, 188 F.3d 322 at 326 (5th Cir. 1999). The "physical injury" required by §1997e(e) must be more than *de minimis*, but need not be significant. Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (citing Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997). "A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional." Luong v. Hatt, 979 F.Supp. 481 (N.D. Tex. 1997). Plaintiff alleged that he had a scratch from Ms. Burnette. Plaintiff sought no medical treatment for this scratch and does not allege that the scratch caused him any pain or discomfort. He does not meet the requirements of 1997e.

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's civil rights action be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana, this 18th day of August, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE